UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                      :

ARTURO MALDONADO, et al.,              :
                                        :

                        Plaintiffs,      :         12 Civ. 5968 (PAE)
              -v-                  :
                                          :         <u>OPINION & ORDER</u>
BTB EVENTS & CELEBRATIONS, INC., et al.,  :
                                        :

                        Defendants.    :
                                          :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       This case involves claims, under federal and state law, that a catering company underpaid

its food-delivery workers.  Defendants BTB Events & Celebrations, Inc., Between the Bread II,

Ltd., and Cookie Panache by Between the Bread, Ltd. are companies that together form a New

York catering and event planning business that operates under the name "Between the Bread."[1]

Plaintiffs are current or former employees whose work involved making food and related

deliveries in connection with Between the Bread's catering and banquet lines of business.

       Although there are a number of aspects to plaintiffs' claims, this lawsuit centers on a

mandatory charge that Between the Bread imposed in connection with delivery orders placed

over the phone.  For those orders, Between the Bread added a mandatory surcharge to customer

invoices amounting to 11% of the total food and drink bill (the "11% surcharge").  However, it

did not treat the 11% surcharge as a tip or gratuity owed to delivery personnel.  Between the

Bread instead retained a portion of the 11% surcharge, and used it to pay various administrative

---

[1] These defendants are collectively referred to as the "corporate defendants."  Ricky I. Eisen
("Eisen"), owner and Chief Executive Officer of the corporate defendants, is also a defendant.
The Court refers to the defendants collectively as "Between the Bread" or as "defendants."

costs and business expenses.  Between the Bread distributed the remainder to delivery personnel,
and credited that amount against the statutory minimum-wage obligations.

Plaintiffs sue under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the
New York Labor Law ("NYLL"), §§ 190 *et seq.* & §§ 650 *et seq.*, and regulations promulgated
under the NYLL by the New York State Department of Labor ("NYSDOL"), *see* N.Y. Comp.
Codes R. & Regs. tit. 12, §§ 137-1.1 *et seq.*  Plaintiffs claim, *inter alia*, that under the FLSA and
NYLL, the 11% surcharge was a tip or gratuity,[2] and that Between the Bread was not entitled to
withhold a portion of the charge from them.  Plaintiffs bring several causes of action under the
FLSA and NYLL, including (1) failure to pay the minimum wage, overtime compensation, and
"spread of hours" premium; (2) unlawful deductions from plaintiffs' wages; (3) unlawful
retention and misappropriation of plaintiffs' gratuities; (4) unlawful retention of service charges
purported to be gratuities from tipped employees; (5) unlawful withholding and/or failing to pay
wages and tips to employees; and (6) failure to reimburse employees for uniform and equipment
purchase and maintenance.  Defendants defend these practices on the ground, *inter alia*, that the
11% surcharge added to delivery invoices was not a gratuity under federal or state law, and that
the proceeds from this charge may be used to satisfy their statutory minimum-wage obligations.

Discovery is complete.  The parties cross-move for partial summary judgment, solely on
the issue of whether the 11% surcharge constituted a gratuity under the FLSA or the NYLL.  For
the reasons that follow, (1) as to the FLSA, defendants' motion for partial summary judgment is
granted, and plaintiffs' motion is denied; and (2) as to the NYLL, for the period through and
including December 31, 2010, defendants' motion for partial summary judgment is granted, and
plaintiff's motion is denied, whereas for the period from January 1, 2011, through September 26,

---

[2] As explained further below, the FLSA and NYLL, and their implementing regulations, use the
terms "tip" and "gratuity" interchangeably.  This Opinion does so as well.

2012, the final date covered by this case,[3] plaintiffs' motion for partial summary judgment is granted and defendants' motion is denied.

## I.     Background[4]

### A.     The Parties and the Relevant Employment Practices

Between the Bread is a catering and events company primarily engaged in delivering food and drink to pre-planned private and corporate events.  It also provides daily *a la carte* catering menus for delivery upon request, either by phone or online.  Joint 56.1 Statement ¶¶ 16, 17.  The company also provides other event-planning services, including securing venues for parties and banquets, decorating event space, providing servers and other event staff, and coordinating rentals of tables, chairs, tents, and the like.  *Id.* ¶ 16.  Between the Bread maintains

---

[3] The Amended Complaint does not specify a fixed end date for plaintiffs' claims.  *See* Am. Compl. ¶ 84 (identifying proposed class period as "August 3, 2006 to the entry of judgment in this case"; plaintiffs ultimately did not pursue an FLSA collective action or a NYLL class action).  The Court sets the end date as September 26, 2012, the date the Amended Complaint was filed.  Dkt. 7.

[4] The Court's account of the underlying facts of this case is drawn from the parties' submissions in support of and in opposition to these motions, including: Memorandum of Law in Support of Defendants' Motion for Partial Summary Judgment ("Def. Br.") (Dkt. 30); Memorandum of Law in Support of Plaintiffs' Cross-Motion for Summary Judgment and in Opposition to Defendants' Motion for Partial Summary Judgment ("Pl. Br.") (Dkt. 33); Reply Memorandum of Law in Support of Defendants' Motion for Partial Summary Judgment and Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Def. Reply Br.") (Dkt. 34); Reply Memorandum of Law in Further Support of Plaintiffs' Cross-Motion for Partial Summary Judgment ("Pl. Reply Br.") (Dkt. 35); the Joint Rule 56.1 Statement of Undisputed Facts ("Joint 56.1 Statement") (Dkt. 28); and the Supplemental Joint Rule 56.1 Statement of Undisputed Facts ("Supplemental Joint 56.1 Statement") (Dkt. 37).  Citations to a party's 56.1 Statement incorporate by reference the documents cited therein.  Where facts stated in a party's 56.1 Statement are supported by testimonial or documentary evidence, and denied by a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts to be true.  *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[ ] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

its corporate office at 244 West 54th Street, New York, NY.  *Id.* ¶ 14.  It maintains a custom-built kitchen at 145 West 55th Street, New York, NY, where it prepares the food for its catering delivery services.  *Id.* ¶ 15.  At all relevant times, Ricky I. Eisen was Between the Bread's owner and chief executive officer.  *Id.* ¶ 20.

Plaintiffs are nine delivery workers for Between the Bread.  Each worked for Between the Bread during some or all of the period between August 3, 2006 and September 26, 2012.  *Id.* ¶¶ 2−10.

At all relevant times, Between the Bread paid its delivery personnel the "tip credit" minimum wage.  It thus paid these workers a base salary below the minimum wage required by federal and state law.  Specifically, it paid plaintiffs $4.60/hour in 2006; $4.85/hour between January 2007 and July 23, 2009; $4.90/hour between July 24, 2009 and December 2010; and $5.65/hour between January 2011 and September 26, 2012.  Joint 56.1 Statement ¶ 24.  In addition, Between the Bread attributed to these workers' compensation a "tip credit," as the FLSA and NYLL permit under specified circumstances, in an amount which, if added to the workers' base salary, achieved the minimum wage.  *Id.* ¶ 23.

At all relevant times, Between the Bread imposed a mandatory 11% surcharge, payable by the customer, on traditional delivery orders placed over the phone.[5]  The 11% surcharge was calculated based on the customer's total food and drink bill.  Joint 56.1 Statement ¶¶ 25−27.  The 11% surcharge was reflected on an invoice provided to the customer upon delivery of an order.  *Id.* ¶ 30.

---

[5] Although plaintiffs claim that Between the Bread also unlawfully retained gratuities paid in connection with online orders, that claim is not implicated by the present cross-motions for summary judgment.

4

Before 2007, Between the Bread's invoices used the term "service charge" to describe the 11% surcharge.  Supplemental Joint 56.1 Statement ¶ 5.   However, beginning in late 2007, the invoices instead used the term "processing surcharge" to denote the 11% surcharge.  Between the Bread used that term for the balance of the period at issue in this case (*i.e.*, through September 26, 2013).  *Id.*

The invoices presented the 11% surcharge as follows.  The surcharge appeared immediately below the line item for food and beverage costs, and immediately above the line item for sales tax.  Thus, the invoices indicated that the 11% surcharge was subject to sales tax; consistent with this, sales taxes were calculated based on the sum of food and beverage costs and the 11% surcharge.  Joint 56.1 Statement ¶ 30.  Immediately below these three items was a subtotal, representing the combined total of food and beverage costs, the 11% surcharge, and sales taxes.  Below the subtotal was a line-item for a "gratuity" with a blank space to the right of it, which the customer was at liberty to fill in.

Thus, through late 2007, the invoice presented as follows:

FOOD AND BEVERAGE……………………………………………………..$xxx

SERVICE CHARGE…………………………………………………...$xxx

SALES TAX……………………………………………………………$xxx

SUBTOTAL……………………………………………………………$xxx

GRATUITY………………………………………………………[BLANK]

TOTAL DUE…………………………………………………………..$xxx

*Id*.  From late 2007 forward, the invoices presented as follows:

FOOD AND BEVERAGE…………………………………………….$xxx

PROCESSING SURCHARGE………………………...……………………$xxx

SALES TAX…………………………………………………………………$xxx

SUBTOTAL…………………………………………………………………$xxx

GRATUITY………………………………………………………………[BLANK]

TOTAL DUE……………………………………………………………..$xxx

At no point did Between the Bread give customers a written explanation (on the invoices or otherwise) of the 11% surcharge.  *Id.* ¶ 31.  Between the Bread instructed delivery personnel not to discuss fees with customers.  It instructed them, in the event a customer inquired about the purpose served by the 11% surcharge, to contact management with such questions.  *Id.* ¶¶ 33–35.  Where customers requested such an explanation, Between the Bread's practice was to provide a statement, written or oral, that the 11% surcharge was "a surcharge for shipping, packaging, fuel, market fluctuations not covered by price increases, various processing and dispatching fees, and additional overhead, and is not a tip."  Supplemental Joint 56.1 Statement ¶ 2.

At all relevant times, Between the Bread included proceeds from the 11% surcharge in its gross receipts.   Joint 56.1 Statement ¶ 40.  It distributed 45% of those proceeds to delivery personnel.  It retained the remaining 55%, which it used to pay various business expenses.  *Id.* ¶ 41.

During the relevant time period, approximately 75% of Between the Bread customers wrote in gratuities on their invoices for traditional delivery orders.  *Id.* ¶ 38.  The average gratuity amounted to approximately 11% of the total food and drink bill.  Supplemental Joint 56.1 Statement ¶ 1 & Ex. 1.  Delivery personnel retained 100% of the gratuities written in by customers.  Joint 56.1 Statement ¶ 39.

### B.      Procedural History

On August 3, 2012, plaintiffs filed their initial Complaint.  Dkt. 1.  On September 26, 2012, plaintiffs filed an Amended Complaint.  Dkt. 7.  On November 16, 2012, defendants filed their Answer.  Dkt. 14.

The Amended Complaint brings various claims under the FLSA and NYLL.  Several are relevant to the instant cross-motions for summary judgment, which are directed to whether the 11% surcharge was a gratuity, as plaintiffs argue, or was not, as defendants argue.  On the premise that that surcharge was a gratuity which the delivery workers were entitled to keep, the Amended Complaint alleges that Between the Bread misappropriated part of that gratuity.  Am. Compl. ¶¶ 23−24, 65−66.  Further, because the FLSA and NYLL allow an employer to take a "tip credit" and thereby pay less than the minimum wage as base pay only where the employee keeps the entirety of any gratuity left by the customer, the Amended Complaint alleges that Between the Bread improperly took a "tip credit" and thereby denied delivery workers a minimum wage.  Am. Compl. ¶ 55; *see* 29 U.S.C. § 203(m) (an employer may not take a tip credit "unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee"); N.Y. Lab. Law § 196–d (precluding employers from retaining employees' gratuities under any circumstances); *Copantila v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 287, 290 (S.D.N.Y. 2011) (FLSA and NYLL require that an employer allow employees to retain all tips as a precondition for taking a tip credit).[6]

---

[6] The Amended Complaint raises other, unrelated claims, including failure to pay proper overtime, failure to pay a "spread of hours" premium, failure to reimburse employees for uniforms and equipment, and claims relating to delivery orders placed by computer.  Am. Compl. ¶¶ 21−22, 25−27, 53, 57, 67−73.  Counsel jointly represent that the claims implicated by

On May 17, 2013, after limited discovery, fact discovery closed, Dkt. 23, and the parties sought leave to cross-move for partial summary judgment, based on jointly stipulated facts.  On July 8, 2013, the parties submitted jointly stipulated facts.  Dkt. 28.

On July 19, 2013, defendants moved for partial summary judgment on the narrow issue of whether the 11% surcharge imposed in connection with Between the Bread's catering deliveries was a gratuity within the meaning of the FLSA or the NYLL.  Dkt. 29.  Defendants argue that it was not, and that the portion of that charge which Between the Bread paid to its delivery workers was properly used as the basis for a "tip credit" against Between the Bread's minimum-wage obligations.  Defendants argue that, because the 11% surcharge was mandatory and appeared "above-the-line" on Between the Bread's invoices, and because the invoice contains a separate "below-the-line" item for a voluntary "gratuity," a reasonable customer would not view the 11% surcharge as a gratuity.  That Between the Bread includes the 11% surcharge in its gross receipts, and pay taxes on, the proceeds from this charge, defendants argue, further supports that the 11% surcharge is not a gratuity under the FLSA or NYLL.

On August 8, 2013, plaintiffs cross-moved for partial summary judgment on the same issue.  Dkt. 31.  Plaintiffs argue that the 11% surcharge is a "gratuity" (the relevant term under the FLSA) and a "charge purported to be a gratuity" (the relevant term under the NYLL), and that Between the Bread thus violated federal and state law in retaining part of that charge. Plaintiffs emphasize that Between the Bread's invoices do not explain the 11% surcharge. Assuming that the 11% surcharge is a gratuity, plaintiffs argue, defendants unlawfully retained a portion of that money for themselves, and improperly applied a tip credit against their minimum wage obligations.

the current motion for partial summary judgment are, monetarily, by far the most significant claims in the case.

On August 8 and 15, 2013, respectively, the parties filed opposition briefs in connection

with the cross-motions.  Dkt. 34, 35.  On October 24, 2013, the Court issued an order inquiring

about several areas of fact and about the extent of discovery.  Dkt. 36.  On October 31, 2013, the

parties submitted a supplemental joint statement of facts.  Dkt. 37.  On November 7, 2013, the

Court heard argument.

## II.     Applicable Legal Standards

To prevail on a motion for summary judgment, the movant must "show[] that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a

question of material fact.  In making this determination, the Court must view all facts "in the

light most favorable" to the non-moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

To survive a summary judgment motion, the opposing party must establish a genuine

issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1);

*see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  "A party may not rely on mere

speculation or conjecture as to the true nature of the facts to overcome a motion for summary

judgment," because "conclusory allegations or denials cannot by themselves create a genuine

issue of material fact where none would otherwise exist."  *Hicks v. Baines*, 593 F.3d 159, 166

(2d Cir. 2010) (citation omitted).  Only disputes over "facts that might affect the outcome of the

suit under the governing law" will preclude a grant of summary judgment.  *Anderson v. Liberty

Lobby Inc.*, 477 U.S. 242, 248 (1986).  In determining whether there are genuine issues of

material fact, the Court is "required to resolve all ambiguities and draw all permissible factual

inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

The same standard applies when the Court considers cross-motions for summary judgment.  "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

**III.    Is the 11% Surcharge a Gratuity?**

The parties' competing summary judgment motions are focused on one issue: whether the 11% surcharge added to Between the Bread's food-delivery invoices was a gratuity within the meaning of the FLSA and NYLL.  If the 11% surcharge was a gratuity that rightfully belonged to the delivery workers, then plaintiffs are entitled to summary judgment on this point, and defendants are liable to plaintiffs on their claims both of improper retention of such gratuities and of improper denial of minimum wages.  If, on the other hand, the 11% surcharge was an administrative charge that belonged to the employer, then defendants' motion for partial summary judgment must be granted and plaintiffs' cross-motion denied.

Because the standards for determining whether a payment is a gratuity differ under the FLSA and the NYLL, *see Barenboim v. Starbucks Corp.*, 698 F.3d 104, 112 (2d Cir. 2012), the Court will analyze and apply these bodies of law separately.

**A.    Analysis Under the FLSA**

Under Department of Labor ("DOL") regulations, a "tip" for the purposes of the FLSA is "a sum presented by a customer as a gift or gratuity in recognition of some service performed for him."  29 C.F.R. § 531.52.  "Whether a tip is to be given, and its amount, are matters determined solely by the customer, who has the right to determine who shall be the recipient of the gratuity."

*Id.*. Thus, as a matter of law, a mandatory charge cannot constitute a "tip" for the purposes of the FLSA. *See id.* § 531.55(a) ("A compulsory charge for service . . . imposed on a customer by an employer's establishment, is not a tip . . . even if distributed by the employer to its employees."); *Chan v. Triple 8 Palace, Inc.*, No. 03 Civ. 6048 (GEL), 2006 WL 851749, at *3 & n.9 (S.D.N.Y. Mar. 31, 2006) (collecting cases and noting that "the payment ordinarily must be an optional 'gift or gratuity' in order to be legally considered a 'tip' for purposes of the FLSA"). An employer's post-hoc treatment of monies derived from a charge is also relevant in determining whether the charge is a tip or a service charge. *See* 29 C.F.R. § 531.55(b) ("[S]ervice charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the [FLSA].").

Measured against these standards, the 11% surcharge imposed by Between the Bread was clearly not a tip within the meaning of the FLSA. It is undisputed that at all times Between the Bread automatically added the "service charge" or "processing surcharge" to customer invoices for delivery orders, and that this 11% charge, however denominated, was non-negotiable. Joint 56.1 Statement ¶ 27. At no time was the decision whether to pay the 11% surcharge voluntary for Between the Bread customers. It is also undisputed that Between the Bread, at all times, included the 11% surcharge in its gross receipts. Joint 56.1 Statement ¶ 40. Given these facts, the 11% surcharge cannot constitute a tip for purposes of the FLSA.

The single district court case plaintiffs cite as standing for the proposition that "where a compulsory charge is reasonably understood to be a gratuity, the FLSA prohibits an employer from misappropriating those charges from the employee," Pl. Br. 4–5, does not avail plaintiffs. In *Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048 (GEL), 2007 WL 313483 (S.D.N.Y. Feb. 1, 2007), the court engaged in an analysis similar to the one required under the NYLL, *see* Part

11

III.B., *infra*, focused on how a customer would perceive a mandatory 15% service charge. The court held that that charge was a tip for FLSA purposes, because "customers would assume that the 15 percent amount referenced on the banquet bill was a tip." *Chan*, 2007 WL 313483, at *16. But *Chan* was decided years before the Second Circuit's 2012 decision in *Barenboim*, which resolved, contrary to the *Chan* court's mode of analysis, that "[t]ips under the FLSA . . . do not include . . . obligatory service charges," *Barenboim*, 698 F.3d at 112. This Court must heed such clear direction from the Circuit. The mandatory 11% surcharge was, therefore, not a tip within the meaning of the FLSA.

### B.       Analysis Under the NYLL

On the question of whether a surcharge to the customer constitutes a gratuity, the NYLL takes a different approach—one far from the bright-line test applied under the FLSA. NYLL § 196-d provides in relevant part that "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." The case law in New York has construed § 196-d to require a holistic assessment of how a reasonable customer would understand, in context, a particular surcharge, and whether it is "purported to be a gratuity."

In the seminal case of *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008) ("*World Yacht*"), the New York Court of Appeals held that a mandatory service charge may constitute a "charge purported to be a gratuity" within the meaning of § 196-d "when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for their employees." 10 N.Y.3d at 81. Whether "a mandatory charge or fee is purported to be a gratuity," the *World Yacht* court instructed, is to be "weighed against the

12

expectation of the reasonable customer." *Id.* at 79; *see also Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 328–29 (S.D.N.Y. 2010) ("Under the *World Yacht* standard, '[w]hether a charge purports to be a gratuity is measured by whether a reasonable patron would understand that a service charge was being collected in lieu of a gratuity.'") (quoting *Krebs v. Canyon Club, Inc.*, 880 N.Y.S.2d 873, 874 (N.Y. Sup. Ct. 2009)).

In March 2010, the NYSDOL, the agency charged with administering the NYLL, issued an "illustrative" but non-exhaustive list of factors that bear on whether a reasonable customer would believe a particular service charge is a gratuity. These included: (1) the font size and prominence of the notice; (2) the label used to denote the charge and whether such a label would confuse patrons (noting that the label "administrative fee" is clearer than "service charge"); (3) whether the purpose the charge and manner in which the charge is calculated are described on the bill; (4) whether the notice discloses the portion of the charge that is being distributed to the service staff and informs that patrons to leave an additional payment as a tip; and (5) whether there exists a separate line for gratuity. *See* Def. Br. Exhibit C ("March 2010 Opinion Letter") at 3; *accord Copantila*, 788 F. Supp. 2d at 286. These factors, the NYSDOL stated, are to be assessed under the "totality of the circumstances." March 2010 Opinion Letter at 2; *see also Spicer*, 269 F.R.D. at 331. The parties agree that both *World Yacht* and the NYSDOL's 2010 interpretive regulations operate retrospectively, not just prospectively, and therefore apply to the entirety of the period (August 3, 2006 through September 26, 2012) covered by this lawsuit. *See Copantitla*, 788 F. Supp. 2d at 283; *Ramirez v. Mansions Catering, Inc.*, 905 N.Y.S.2d 148, 150 (1st Dep't 2010).

Later NYSDOL regulations, effective January 1, 2011 (the "2011 Regulations"), use more determinate terms in construing § 196-d. These create "a rebuttable presumption that any

charge in addition to charges for food, beverage, lodging, and other specified materials or

services, including but not limited to any charge for 'service' or 'food service,' is a charge

purported to be a gratuity."  N.Y. Comp. Codes R. Regs. tit. 12, § 146-2.18(b).  The 2011

Regulations further provide that:

> (a) A charge for the administration of a banquet, special function, or package deal shall be clearly identified as such and customers shall be notified that the charge is not a gratuity or tip.

> (b) The employer has the burden of demonstrating, by clear and convincing evidence, that the notification was sufficient to ensure that a reasonable customer would understand that such charge was not purported to be a gratuity.

> (c) Adequate notification shall include a statement in the contract or agreement with the customer, and on any menu and bill listing prices, that the administrative charge is for administration of the banquet, special function, or package deal, is not purported to be a gratuity, and will not be distributed as gratuities to the employees who provided service to the guests.  The statements shall use ordinary language readily understood and shall appear in a font size similar to surrounding text, but no smaller than a 12-point font.

> (d) A combination charge, part of which is for the administration of a banquet, special function or package deal and part of which is to be distributed as gratuities to the employees who provided service to the guests, must be broken down into specific percentages or portions, in writing to the customer, in accordance with the standards for adequate notification in subdivision (c) of this section. The portion of the combination charge which will not be distributed as gratuities to the employees who provided service to the guests shall be covered by subdivisions (a), (b) and (c) of this section.

*Id.* § 146-2.19.

Under New York law, the NYSDOL's interpretation of NYLL § 196-d is entitled to

deference.  *See Barenboim*, 698 F.3d at 112 (citing *World Yacht*, 10 N.Y. 3d at 79).

With these considerations in mind, the Court considers whether the 11% surcharge was a

"charge purported to be a gratuity for an employee" within the meaning of § 196-d.  Because the

14

2011 Regulations marked something of an analytic Rubicon, the Court divides its analysis into the periods before, and then after, the January 1, 2011 effective date of those 2011 Regulations.[7]

At the threshold, the Court notes that counsel for both parties agreed at argument that the issue of the characterization of the 11% surcharge is one for the Court to resolve on summary judgment, and not to be decided by a jury, even if reasonable minds could differ as to whether the 11% surcharge was purported to be a gratuity.  Counsel further agreed that this determination was to be made on the basis of limited facts stipulated to by counsel.  As counsel explained, the parties, for cost reasons, did limited discovery; they did not, for example, depose customers to learn directly how they understood the surcharge line on the invoice.  Nor were delivery personnel deposed.  The Court thus must rely—and rule—upon a limited pool of evidence.  It consists of the invoices themselves; Between the Bread's policy as to how its employees were to respond in the event of questions about the 11% surcharge; data as to the frequency with which customers completed the voluntarily below-the-line "gratuity" line on the invoice; and a spreadsheet providing what the parties agree is a representative sampling of such voluntary gratuities.

### 1.      The 11% Charge Prior to January 1, 2011

Plaintiffs argue that because Between the Bread's invoices did not explain the 11% surcharge, a reasonable customer would understand it to be "a tip for the Plaintiffs' delivery services."  Pl. Br. 2, 9–10.  Defendants counter that because the invoices contained a separate line-item for a "gratuity," a reasonable customer would not assume that the 11% surcharge was itself a gratuity.  Defendants further note that 75% of customers demonstrably left a gratuity for

---

[7] By their terms, the 2011 Regulations are effective January 1, 2011, and plaintiffs have not argued that they operate retroactively.  Accordingly, the 2011 Regulations govern only the claims accruing on or after January 1, 2011.  *See Barenboim*, 698 F.3d at 113 ("New York regulations presumptively lack retroactive effect.").

the delivery person, as reflected in the gratuity line on the completed invoices.  This, defendants argue, reveals that patrons did not view the 11% surcharge as in lieu of gratuity.  Def. Br. 10–11.

Although reasonable minds can differ, for the period preceding the effective date of the 2011 Regulations, defendants' position is the more persuasive.  It is undisputed that on all of Between the Bread's customer invoices during this period, the 11% surcharge was above the line, subject to sales tax, and included in the subtotal, and that there was a separate line-item denominated "gratuity."  The gratuity line was of equal size and prominence as the 11% surcharge.  Joint 56.1 Statement ¶ 30.  And, from late 2007 through the end of 2010, Between the Bread described the 11% surcharge as a "processing surcharge."  Although, for a person eager to understand the use to which the 11% surcharge actually was put, this formulation is woefully elliptical, the term "processing surcharge" does not, by its terms, suggest that it is compensation for delivery personnel.  Viewed under the totality of the circumstances, these factors would most likely lead a reasonable customer to believe that the 11% charge was an administrative charge that would be retained by Between the Bread, not a gratuity to be distributed to delivery personnel.

Customers' gratuity-giving practices support this conclusion.  Approximately 75% of customers left an additional gratuity that was memorialized on the completed invoice.  Joint 56.1 Statement ¶ 38.  These gratuities averaged $18.78, or 11.19% of the food and beverage total.  Supplemental Joint 56.1 Statement, Ex. 1.  As the chart reflecting 75 representative gratuities reflects, on the invoices in which a customer's gratuity was reported, these gratuities were, with few exceptions, non-trivial.  No gratuity was under $3; 69 of the 75 gratuities (92%) were $6 or greater; and 52 of the 75 gratuities (69%) were $10 or greater.  *Id.*

To be sure, as plaintiffs note, Between the Bread could have clarified for customers, through a plain statement on the invoice, that the 11% surcharge was not a gratuity, and that Between the Bread would be retaining some of that surcharge.  It did not do so.  *See* Pl. Br. 10–12; Joint 56.1 Statement ¶¶ 31, 32.  Among the factors set forth in the NYSDOL's March 2010 Opinion Letter, this factor favors plaintiffs.  Further, the term "service charge" used through mid-2007, could certainly have been construed to denote a gratuity; the NYSDOL in 2010 instructed that the term "service charge" was an example of a "label[] that tend[s] to confuse patrons" and should be avoided.  March 2010 Opinion Letter at 3.  But the March 2010 Opinion Letter does not make any prophylactic disclosure mandatory.  Nor does it state that a customer ineluctably would construe the term "service charge" to connote a gratuity.  Rather, NYSDOL then instructed that whether a particular charge purported to be a gratuity must be assessed under the "totality of the circumstances."  March 2010 Opinion Letter 2–3 & n.1; *see Spicer*, 269 F.R.D. at 332.  Although the issue presents a relatively close question, the Court, considering all factors, is persuaded that a reasonable customer viewing the 11% surcharge in context would not regard it as a purported gratuity.

*Copantitla* is not to the contrary.  There, the defendant restaurant added a mandatory charge amounting to 20% of the ultimate food and drink bill—variously identified as "gratuity," "service charge," and "tip" on the restaurant's website, menus, and promotional materials—to contracts for preplanned events.  788 F. Supp. 2d at 272.  The restaurant's website informed customers that the "20% service charge will be added to your final bill to accommodate the service staff."  *Id.* (internal quotation marks and citation omitted).  The restaurant nowhere told customers that it would retain a portion of the 20% charge to pay its costs.  *Id.* at 273.  Applying *World Yacht* and the NYSDOL's later pronouncements, Judge Holwell held that a reasonable

customer would view the 20% charge as a gratuity.  He relied on the fact that the defendants had used confusing terminology to describe the 20% charge; that the restaurant's contracts did not alert customers that the 20% charge would not be distributed entirely to service staff; and that banquet customers rarely left an additional gratuity.  *See id.* at 286–87.

Here, by contrast, Between the Bread did not call the 11% charge a "gratuity" or "tip," terms that would unquestionably lead a reasonable customer to believe that a mandatory charge was, indeed, a gratuity or tip.  Its formulations, although ambiguous, were not affirmatively misleading, as in *Copantitla*.  Nor is there evidence that Between the Bread ever misstated or misled customers as to the purpose of the 11% charge, as the restaurant in *Copantitla* did when it represented the 20% charge as imposed for the purpose of "accommodat[ing] the service staff." *Id.* at 272.  Moreover, the tip-giving practices of Between the Bread's delivery customers are a far cry from those in *Copantitla*.  There, Judge Holwell viewed "the 'rare' additional gratuity" as "consistent with a general customer expectation that the Banquet Service Charge is a gratuity." 788 F. Supp. 2d at 286–87.  By contrast, the overwhelming majority of Between the Bread customers (at least 75%) added an additional gratuity to delivery invoices, and for the most part these were substantial, non-paltry sums, generally ranging between 10% and 13% of the food and beverage total.  Supplemental Joint 56.1 Statement ¶ 1 & Ex. 1.  In the Court's view, it is relatively unlikely that these substantial sums were viewed by customers as *additional* gratuities paid in recognition of exceptional service by delivery personnel.  The more natural conclusion is that these customers did not regard the 11% above-the-line surcharge as a separate gratuity to which the voluntary below-the-line gratuity was to be added.

For these reasons, as to the period through and including December 31, 2010, defendants' motion for partial summary judgment is granted and plaintiffs' cross-motion is denied.

### 2.      The 11% Charge Beginning January 1, 2011

The analysis differs, however, for the period beginning January 1, 2011, the effective date of the 2011 Regulations.  Those regulations embody the NYSDOL's interpretation of NYLL § 196-d of the NYLL; neither party challenges their validity.  Although consistent with the mode of analysis used by *World Yacht* and in the NYSDOL's March 2010 Opinion Letter that focuses on the expectations of a reasonable customer, the 2011 Regulations place a greater onus on an employer defending a mandatory surcharge as other than "a charge purported to be a gratuity." First, as noted, § 146-2.18 creates a "rebuttable presumption" that any charge made in addition to charges for food, beverage and specified other materials or services "is a charge purported to be a gratuity."  N.Y. Comp. Codes R. Regs. tit. 12, § 146-2.18.  Second, § 146-2.19 states that an administrative charge "shall be clearly identified as such and customers shall be notified that the charge is not a gratuity or tip"; that "[t]he employer has the burden of demonstrating, by clear and convincing evidence, that the notification was sufficient to ensure that a reasonable customer would understand that such charge was not purported to be a gratuity"; and that "[a]dequate notification shall include a statement in the contract or agreement with the customer, and on any menu or bill listing prices, that the administrative charge is for administration of the banquet, special function, or package deal, is not purported to be a gratuity, and will not be distributed as gratuities to the employees who provided service."  *Id.* §§ 146-2.19(a)-(c).

The parties vigorously dispute whether the 2011 Regulations create a bright-line rule under which, to treat a mandatory charge as other than a gratuity, an employer must make an affirmative written notification to customers that the charge is not a gratuity.  In arguing for this reading, plaintiffs note that §§ 146-2.19(a)-(c), in describing the written notification to customers use mandatory words such as "shall" and "must."  Such terms, plaintiffs note, ordinarily connote

19

a mandatory duty.[8]  For their part, defendants regard the notification described in the 2011 Regulations as merely a voluntarily prophylactic by which an employer can assure compliance with § 196(d), but not the only means of doing so.  Otherwise, defendants argue, the accompanying provisions creating a presumption of a gratuity, *id.* § 146-2.18(b), and placing the burden on the employer to establish sufficient notification by clear and convincing evidence, *id.* § 146-2.19(b), would be unnecessary:  Either a charge would be accompanied by the mandatory notification or it would not.  Defendants thus read the § 146-2.19(c) notification as merely a safe harbor, not a requirement.

There are colorable arguments for either reading, but the Court need not resolve this issue here.  Even assuming that § 146-2.19(c) merely creates a safe harbor and does not mandate a specific affirmative written notification, under § 146-2.19(b), defendants would still need to show, "*by clear and convincing evidence*," that what notification they gave "was sufficient to ensure that a reasonable customer would understand that such charge was not purported to be a gratuity."  *Id.* § 146-2.19(b) (emphasis added).

Between the Bread cannot meet that elevated standard.  As described above, considering the various factors identified in the March 2010 Opinion Letter, the Court held that defendants had the better of the argument as to how a reasonable customer would view the 11% surcharge.

---

[8] *See id.* § 146-2.19(a) ("A charge for the administration of a banquet, special function, or package deal *shall* be clearly identified as such and customers shall be notified that the charge is not a gratuity or tip.") (emphasis added); *id.* § 146-2.19(c) ("[A]dequate notification *shall* include a statement in the contract or agreement with the customer . . . that the administrative charge is for administration of the banquet, special function, or package deal, is not purported to be a gratuity, and will not be distributed as gratuities to the employees who provided service to the guests. The statements *shall* use ordinary language readily understood and *shall* appear in a font size similar to surrounding text, but no smaller than a 12-point font.") (emphases added); *id.* § 146-2.19(c) ("A combination charge . . . *must* be broken down into specific percentages or portions, in writing to the customer, in accordance with the standards for adequate notification in subdivision (c) of this section.") (emphasis added).

Primarily, this was based on inferences fairly drawn from the structure of the invoice. The 11% surcharge was above-the-line, there was a separate line-item for gratuities, and most customers left a gratuity. But the question was a reasonably close one. Between the Bread's circumstantial proof certainly did not show, clearly and convincingly, that a reasonable customer would have viewed the 11% surcharge as other than a gratuity. And the elusive term used to describe that surcharge, a "processing surcharge," is a far cry from an explicit notification of the purpose to which it would be put. The heightened standard of proof imposed by the 2011 Regulation is one that cannot be met by Between the Bread's indirect signaling. Should it wish to avoid future liability under the NYLL based on inadequately explained mandatory charges, Between the Bread would do well to consider including an explicit statement on its invoices consistent with that described in § 146-2.19(c).

For these reasons, for the period between January 1, 2011 and September 26, 2012, plaintiffs' motion for partial summary judgment based on NYLL § 196-d is granted, and defendants' motion for partial summary judgment is denied.

## CONCLUSION

For the reasons stated above, (1) as to the FLSA, defendants' motion for partial summary judgment on the issue of whether the 11% mandatory surcharge was a gratuity is granted, and plaintiffs' motion is denied; and (2) as to the NYLL, for the period through and including December 31, 2010, defendants' motion for partial summary judgment on the issue of whether the 11% mandatory surcharge is granted, and plaintiff's motion is denied, whereas for the period from January 1, 2011 through September 26, 2012, plaintiffs' motion for partial summary judgment on that question is granted, and defendants' motion is denied.

The Clerk of Court is directed to terminate the motions pending at docket #29 and #31.

The Court directs the parties, by Tuesday, December 3, 2013, to meet and confer about the future course of this litigation. If the parties have not by then resolved the case, counsel are directed, by Friday, December 6, 2013, to submit a joint letter setting forth their respective views as to next steps of this litigation.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: November 22, 2013
      New York, New York